UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

SHANE CUNNINGHAM, )
)
    Plaintiff, )
) No. 1:13-cv-224-CLC-SKL
v. )
)
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Shane Cunningham brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his supplemental security income ("SSI") and disability insurance benefits ("DIB"). Plaintiff and Defendant have each filed a motion for summary judgment [Docs. 10, 15]. Plaintiff alleges Administrative Law Judge ("ALJ") Ronald J. Feibus erred when he failed to comply with the treating physician rule, improperly adopted the opinion of a medical advisor, and was biased against Plaintiff. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 15] be **GRANTED**; and (3) the decision of Commissioner be **AFFIRMED**.

I.     ADMINISTRATIVE PROCEEDINGS

Plaintiff timely filed applications for SSI and DIB alleging disability as of July 30, 2009 (Transcript ("Tr.") 255-67). Plaintiff's claim was denied initially and upon reconsideration and he requested a hearing before the ALJ (Tr. 125-30, 133-36, 137-41). The ALJ held hearings on October 20, 2011 and November 29, 2011, during which Plaintiff was represented by an attorney (Tr. 24-

1

120). The ALJ issued an unfavorable decision (Tr. 8-19) and the Appeals Council denied Plaintiff's request for review (Tr. 1-3), making the ALJ's decision the final, appealable decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Background

Plaintiff was born in 1973, and was 38 years old at the first hearing (Tr. 27-28). Plaintiff had a tenth grade education and was able to communicate in English (Tr. 18, 29). Plaintiff has past relevant work as a forklift operator, machine feeder, assembler, and general laborer (Tr. 17, 91-93).

### B. Testimony

The first hearing consisted of testimony from Plaintiff and commentary from the ALJ who noted he planned to have a second hearing to obtain the opinion of a medical expert due to certain shortcomings in the record. Among other things, Plaintiff testified that lifting anything or walking "kills [him]," his back pain affected between his shoulder blades and made it difficult to raise his arms, and his girlfriend did most of his household chores (Tr. 35-41). At various points during the first hearing, the ALJ told the Plaintiff that the kind of injury he had was generally not disabling and typically "shouldn't be any big deal" (Tr. 31). The ALJ also stated that most 30-year olds with a minor back injury are not disabled and noted Plaintiff was neurologically intact (Tr. 42). In addressing pain, the ALJ analogized to "old" people whose pains increase with age and stated he "suspect[s] that old people don't mind dying . . . because [they] get to the point where [they] can't stand it anymore" (Tr. 43). The ALJ also inquired about Plaintiff's car wreck settlement, which was for the at-fault driver's insurance policy limits, but she had the minimum amount of insurance (Tr. 37). Plaintiff testified he used that money to pay down the home he and his girlfriend occupied (Tr.

44-45). When Plaintiff testified that he did not have insurance or money to see certain doctors, the ALJ commented that sounded like Plaintiff was saying "I don't have any money to go to the doctor because I gave it to my girlfriend." or "Gee, I didn't really think that through completely." (Tr. 45). The ALJ also noted Plaintiff's medical records indicated Plaintiff had a mild injury to the spine, which had basically healed, and he noted his skepticism about Plaintiff's claims of disabling limitations, but he gave Plaintiff an opportunity to submit additional medical information and arranged for a supplemental hearing after Plaintiff's records were reviewed by a medical advisor (Tr. 48-62).

The second hearing, conducted about a month after the first, consisted of testimony from the medical advisor, Dr. Arthur Lorber and a vocational expert. Dr. Lorber is a 73 year old board certified orthopedic surgeon, and last performed back surgery in 1992 (Tr. 81-82, 117). Plaintiff contends Dr. Lorber's resume shows he spent most of his career performing evaluations for insurance companies (Tr. 225-26). At the beginning of the hearing, Dr. Lorber asked questions of Plaintiff regarding his medications (Hydrocodone four times a day plus two more at night), lack of daily use of a cane, and the $12,000 Plaintiff received from his $25,000 policy-limits car wreck settlement (Tr. 69-73, 80-81). Dr. Lorber testified he wanted to know the settlement amount because it reflected how other people (physicians and insurance representatives) interpreted the severity of Plaintiff's injuries and might indicate if he missed something in the file, but that the amount of the settlement did not have a significant bearing on his opinion (Tr. 79-80). Dr. Lorber opined Plaintiff would be able to lift 20 pounds occasionally and 10 pounds frequently; could stand or walk for 30 minutes at time and two hours in a workday; and sit for 30 minutes at a time and for six hours in a workday (Tr. 76). He testified the surgery Dr. Kern had described as "extensive," was most likely

a lumbar fusion surgery from T12 to L2 (Tr. 88). He also testified Dr. Ball is an anesthesiologist and not an expert in muscular skeletal diseases (Tr. 75-76, cf., 114)

Dr. Lorber's opinions were presented to Dr. Hark, the vocational expert ("VE"). The VE testified that such limitations would eliminate all Plaintiff's past work and 60% of sedentary jobs (Tr. 96).

### C. Medical Records

Plaintiff's claim for disability is focused on a back injury that occurred on July 30, 2009, when he fractured his lower back in a motor vehicle accident (Tr. 322-57). At the hospital, a neurologist reviewed the CT, which showed a L1 fracture with 40-50% loss of disc height (Tr. 340). Plaintiff continued to follow with Dr. Kern and on August 2009, x-rays still showed a 40-50% loss of disc height (Tr. 369). On September 11, 2009, kyphoplasty was noted as a possible surgical solution as Plaintiff's symptoms of back pain persisted (Tr. 367). Subsequent x-rays showed Plaintiff's kyphotic angulation had progressed to approximately 18 degrees (Tr. 363). On January 4, 2010, Dr. Kern noted, "the surgical procedure to correct [Plaintiff's] deformity would be extensive" (Tr. 362). After Plaintiff elected not to have surgery, Dr. Kern referred Plaintiff to pain management with Dr. Gregory Ball (Tr. 362) at Consultants in Pain Management. Dr. Kern's final notes reflect Plaintiff has chronic back pain status post L1 burst fracture (Tr. 359).

Plaintiff received pain management treatment from Dr. Ball and others at Consultants in Pain Management in 2010 and 2011. Physical examinations showed reduced range of motion of the lumbar spine as well as tenderness to palpitation (Tr. 408-23 & 437-64). Plaintiff consistently reported pain in the seven or eight out of ten range (Tr. 407-23 & 437-64). Dr. Ball prescribed pain medication (Tr. 408-23 & 436-64).

4

Physical examination at Consultants in Pain Management in March 2010 showed Plaintiff's cervical spine was in normal alignment, and there was no tenderness to palpation (Tr. 383). The physical examination found no gross abnormalities of the upper extremities and Plaintiff had intact muscle strength and range of motion; some restriction of range of motion in the thoracic spine upon flexion, but Plaintiff's extension was within normal limits; no focal tenderness and Plaintiff had normal anatomic alignment; and restricted range of motion on flexion in the lumbar spine, but none on extension (Tr. 383). Plaintiff's rotation to the left and right were restricted due to pain, but he had no tenderness to palpation and his straight leg raises were negative (Tr. 383). Plaintiff's alignment was normal and facet-loading testing was negative bilaterally and his lower extremities were normal bilaterally (Tr. 383).

Progress notes from Consultants in Pain Management dated in November 2010 showed Plaintiff's physical examination had improved somewhat, and that Plaintiff's range of motion in the lumbar spine was within normal limits and that he exhibited only moderate tenderness to palpation throughout the lumbar spine (Tr. 423). Plaintiff indicated he was compliant with his medications with no adverse side effects (Tr. 421). Plaintiff admitted during a review of systems involving his ability to stand upright, that he had no difficulty walking and experienced no muscle cramps (Tr. 422). Plaintiff continued treatment at Consultants in Pain Management in 2011, and his physical examination findings continued without significant changes (Tr. 408-20).

Thomas Mullady, M.D., a consultative physician, evaluated Plaintiff on January 21, 2011 (Tr. 16, 385-386). Plaintiff's physical examination showed no edema or joint deformities, but there was some decreased range of motion in the lumbar spine, but Plaintiff's straight leg raises were to 90 degrees (Tr. 16, 386). Plaintiff's right ankle exhibited a normal range of motion and Plaintiff's

5

gait appeared somewhat antalgic and he used a cane for balance, but not for ambulation (Tr. 16, 386-87). Dr. Mullady opined in January 2011 that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds; could stand and/or walk with normal breaks for at least two hours in an eight-hour workday; and could sit with normal breaks for at least six hours in an eight-hour workday (Tr. 16, 387).

Dr. Christopher Fletcher, a state agency non-examining physician, opined in February 2011 that Plaintiff could lift and/or carry 20 pounds occasionally; ten pounds frequently, stand and/or walk for at least two hours in an eight-hour day, and sit for about six hours in an eight-hour day (Tr. 428). Dr. Fletcher found Plaintiff used a self-prescribed cane and should never climb ladders, ropes, or scaffolds and would be limited to occasional postural movements, and should avoid concentrated exposure to vibrations and hazards (Tr. 429-31).

Dr. Ball completed a medical assessment regarding Plaintiff's functional restrictions dated September 8, 2011, in which he stated Plaintiff could only stand for 15 minutes at one time and two hours in a workday; could only sit for 30-60 minutes at one time and for four hours in a workday; and could only lift ten pounds occasionally and five pounds frequently (Tr. 426). Dr. Ball rated Plaintiff's constant pain as mild to moderate and noted occasional severe pain (Tr. 426).

## III. ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable

> physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B. ALJ's Application of the Sequential Evaluation Process

At step one of the five-step process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since July 30, 2009, the alleged onset date (Tr. 13). At step two, the ALJ found Plaintiff had the following severe impairments: status-post right ankle fracture and status-post motor vehicle accident with subsequent lumbar fracture (Tr. 13). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x. 1 (Tr. 13-14). The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in the regulations except he would need to alternate positions every 30 minutes, never climb ladders, ropes, or scaffolds, balance, come in contact with vibrations, kneel, crawl, or work around heights, and that further, Plaintiff should only occasionally, stoop, bend, or

7

crouch (Tr. 14). At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a construction worker, machine feeder, assembler, or general laborer (Tr. 17). Utilizing the Medical Vocational Guidelines ("Grids"), the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform (Tr. 18). These findings led to the ALJ's determination that Plaintiff was not under a disability as of July 30, 2009 (Tr. 18).

## IV. ANALYSIS

Plaintiff asserts three main arguments. First, Plaintiff alleges the ALJ improperly adopted the opinion of a medical advisor as the basis for his RFC. Second, Plaintiff argues the ALJ improperly discounted the opinion of a treating physician, Dr. Ball. Third, Plaintiff attacks the ALJ's conduct during the hearing as being unnecessarily prejudiced toward and dismissive of Plaintiff tainting his analysis of Plaintiff's claim in general.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v.*

8

*Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility.  *Garner*, 745 F.2d at 387.  The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review.  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived).

### B. ALJ's Evaluation of Opinion Evidence

Plaintiff contends the ALJ erred when he adopted the restrictions opined by Dr. Lorber (without mentioning Dr. Lorber in the decision) and gave Dr. Ball's treating physician opinion little weight. Plaintiff also alleges Dr. Lorber was biased against Plaintiff because Dr. Lorber is "an insurance company doctor."

With respect to Dr. Lorber's opinion, the ALJ referenced Dr. Lorber, but did not state he

9

was adopting Dr. Lorber's testimony as the basis for his RFC (Tr. 14). Instead, the ALJ extensively discussed the evidence of record supporting his RFC finding. The ALJ observed Dr. Kern's hospital follow-up notes reflected that in August 2009 Plaintiff's physical examination showed normal muscle strength in all extremities (except right arm due to elbow laceration), significant lumbar tenderness around L1 and a moderately antalgic gait and no neurovascular deficit was noted (Tr. 15, 369). The ALJ noted the lumbar spine MRI conducted in November 2009 revealed no interval changes since July 2009 and no significant stenosis among other findings (Tr. 15, 323). The ALJ observed that Dr. Kern noted in March 2010 that Plaintiff reported his symptomatology was no longer constant and it was decreasing in intensity (Tr. 15, 360). The ALJ observed that physical examination showed normal muscle strength throughout, only minimal lumbar tenderness, and some paraspinal muscle spasms; Plaintiffs's gait was smooth and coordinated; and x-rays revealed a stable L1 compression fracture with no further loss of height seen (Tr. 15, 360-61).

The ALJ also noted that Dr. Mullady opined in January 2011 that Plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry ten pounds; could stand and/or walk with normal breaks for at least two hours in an eight-hour workday; and could sit with normal breaks for at least six hours in an eight-hour workday (Tr. 16, 387). Dr. Mullady noted Plaintiff used a cane for balance but was able to walk without the use of the cane (Tr. 387).

The ALJ also noted that many of the records from Dr. Ball at Consultants in Pain Management contradicted Dr. Ball's opinion of Plaintiff's limitations. For instance, the records showed Plaintiff's cervical spine was in normal alignment and there was no tenderness to palpation (Tr. 15, 383). The ALJ observed the physical examination found no gross abnormalities of the upper extremities and Plaintiff had intact muscle strength and range of motion; some restriction of range

10

of motion in the thoracic spine upon flexion, but Plaintiff's extension was within normal limits; no focal tenderness and Plaintiff had normal anatomic alignment; and restricted range of motion on flexion in the lumbar spine, but none on extension (Tr. 15, 383). The ALJ noted that rotation to the left and right were restricted due to pain, but no tenderness to palpation and his straight leg raises were negative (Tr. 15, 383). Plaintiff's alignment was normal and facet-loading testing was negative bilaterally and his lower extremities were normal bilaterally (Tr. 15, 383).

The ALJ observed that progress notes from Consultants in Pain Management dated in November 2010 showed Plaintiff's physical examination had improved somewhat, and that Plaintiff's range of motion in the lumbar spine was within normal limits and that he exhibited only moderate tenderness to palpation throughout the lumbar spine (Tr. 15-16, 423). The ALJ also noted that Plaintiff indicated he was compliant with his medications with no adverse side effects and that he had no difficulty walking and experienced no muscle cramps (Tr. 16, 421-22). The ALJ noted that Plaintiff continued treatment at Consultants in Pain Management in 2011, and his physical examination findings continued to be unremarkable (Tr. 16, 408-20).

The ALJ found Dr. Mullady's opinion was somewhat supported by the record and gave it some weight, but the ALJ also found, based on "giving generous consideration to [Plaintiff's] subjective complaints," that Plaintiff would be limited in his ability to perform postural movements, such that he would need to alternate between sitting and standing, should avoid climbing ladders, ropes, and scaffolds, and should not be required to balance (Tr. 16). The ALJ found Dr. Fletcher's opinion supported by the record and he gave it significant weight, except in regard to balancing, kneeling, crawling, and in relation to Plaintiff's need to alternate positions every 30 minutes (Tr. 17). The ALJ stated that additional limitations in these areas were the result of giving Plaintiff's

11

subjective complaints "generous consideration" (Tr. 17). The ALJ found Plaintiff's RFC to be more restrictive than that found by Dr. Fletcher, but also found Dr. Fletcher's opinion provided support for the RFC determined by the ALJ (Tr. 17).

With respect to Dr. Ball's opinion, the law governing the weight to be given to a treating physician's opinion is well settled: A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2) (now (c)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference or weight commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 545 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)).

The United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has reiterated that

12

remand may be required when the ALJ fails to specify the weight afforded to a treating physician's opinion and fails to provide good reasons for giving the opinion an unspecified weight that is less than controlling. *Cole v. Astrue*, 661 F.3d 931, 938-39 (6th Cir. 2011). As stated in *Cole*, "[t]his Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned.'" *Id.* at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)). In the same vein, the Sixth Circuit also recently took issue with a stated good reason that the treating physician's opinion "conflicted with other evidence," noting the allegedly conflicting evidence must be specified and "must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013). The Sixth Circuit further stated that "[a] more rigorous scrutiny of the treating source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation requires." *Id.* at 379. Although "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians . . . the regulations do not allow the application of greater scrutiny to a treating source opinion as a means to justify giving such an opinion little weight." *Id.* at 379-80 (citations omitted).

Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Wilson*, 378 F.3d at 544, 547. In *Cole*, the Sixth Circuit recognized that a violation of the "good reasons" rule could only be harmless

13

error under three circumstances: where the treating source opinion was patently deficient such that it could not be credited; where the Commissioner adopted the opinion of the treating source or made findings consistent with that opinion; or where the Commissioner otherwise met the goal of the treating source regulation, 20 C.F.R. § 404.1527(c)(2). *Cole*, 661 F.3d at 940 (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). While each case must be evaluated to determine if the required procedures have been appropriately followed, an ALJ's failure to specify the weight afforded to a treating physician or to outline sufficiently specific good reasons could be grounds for remand. *Gayheart*, 710 F.3d at 380, *Cole*, 661 F.3d at 939-40.

To be entitled to controlling weight, the treating physician's opinion must be well-supported by medically acceptable clinical and laboratory diagnostic techniques and it must be "not inconsistent" with the other substantial evidence in the individual's case record. *See* SSR 96-2p. The ALJ's discussion of the medical evidence of record supports his finding that Plaintiff's medical records did not support the level of limitation Dr. Ball opined (Tr. 15-17, 383, 408-20, 423). Additionally, Dr. Ball's opinion was contradicted by Dr. Mullady's findings and the opinion of Dr. Fletcher (Tr. 16-17, 387, 428-31). Although not accorded the same controlling weight or deference as the opinions of treating physicians, the findings of state agency medical consultants regarding the nature and severity of Plaintiff's impairments are considered expert opinions, *see* SSR 96-6p, and the opinion of the consultants provides support for the ALJ's decision in this case.

Plaintiff argues the ALJ did not give good reasons for the weight he gave Dr. Ball's opinion, alleging that he did not consider the relevant factors that go into weighing a medical opinion, but the ALJ's decision and the transcript from the hearings show he did consider Dr. Ball's treating relationship to Plaintiff, the extent and duration of the relationship, Dr. Ball's specialization, and the

14

supportability of his opinion with the record as a whole (Tr. 15-17, 24-120, 383, 408-20, 423). The ALJ acknowledged Dr. Ball was Plaintiff's treating physician and that he was associated with Consultants in Pain Management (Tr. 17). The ALJ fully reviewed and evaluated the records from Consultants in Pain Management, noting Plaintiff's treatment over the course of 2010 and 2011 (Tr. 15-17, 383, 408-20, 423). In doing so, the ALJ's adequately considered the nature of the treatment, the frequency and duration of the treatment, and Dr. Ball's work in pain management. *See Friend*, 375 F. App'x at 551; *Francis*, 414 F. App'x at 804. The ALJ also stated his good reasons for giving Dr. Ball's opinion little weight and those reasons are supported by substantial evidence in the record.

While the Code of Federal Regulations states, "[g]enerally, we give more weight to the opinion of a source who has examined you than to an opinion of a source who has not examined you[,]" 20 C.F.R. § 404.1527(d)(1), that does not *preclude* the ALJ from relying on a non-examining source. *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 438-39 (6th Cir. 2012) ("Pursuant to 20 C.F.R. §§ 404.1527(d) and 416.927, an ALJ is to 'evaluate *every medical opinion*' submitted in light of a variety of listed factors, which include the nature of the treatment relationship, the supporting medical basis for the opinion, and overall consistency with the larger record.") (emphasis added). Moreover, the ALJ relied on non-examining, examining, and treating sources in this case and adequately explained why some opinions were accorded greater weight than others. Thus, Plaintiff fails to establish error on these grounds.

**C.    Bias**

Plaintiff argues the ALJ was biased, pointing to comments made at the hearing indicating the ALJ thought Plaintiff's injuries were minor. In addressing such a bias argument, courts must start with the presumption that "policymakers with decisionmaking power exercise their power with

15

honesty and integrity" and "any claim of bias must be supported by a 'strong showing' of bad faith." *Carelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 436-37 (6th Cir. 2010) (citations and internal quotations omitted). "[F]or the alleged bias to be disqualifying, it must 'stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Shears v. Comm'r of Soc. Sec.*, No. 1:09-cv-1011, 2010 WL 3385518, at *9 (W.D. Mich. Aug. 2, 2010) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563 (1966)). Plaintiff has not provided any evidence the ALJ was biased other than the comments he made on the record during the hearing. With respect to the comments at the hearing, the Commissioner appears to concede "the ALJ could have tempered his remarks," [Doc. 16, Page ID # 514], but correctly argues the comments do not show bias. I **FIND** the ALJ's comments have not been shown to rise to the high level of disqualifying bias.

While Plaintiff argues Dr. Lorber was biased in favor of insurance companies or was not qualified to render an opinion, these arguments were essentially rejected by the ALJ during the second hearing. The transcript of the second hearing does not provide sufficient evidence to find the ALJ erred in this regard or that Dr. Lorber improperly considered the amount of Plaintiff's settlement. Instead, the transcript indicates Dr. Lorber mainly focused on Plaintiff's medical records, as argued by Defendant.

V.  **CONCLUSION**

Having carefully reviewed the administrative record and the parties' arguments, I

16

Case 1:13-cv-00224-CLC-SKL   Document 17   Filed 06/03/14   Page 16 of 17   PageID #: 534

**RECOMMEND** that:[1]

    (1)    Plaintiff's motion for summary judgment [Doc. 10] be **DENIED**.

    (2)    The Commissioner's motion for summary judgment [Doc. 15] be **GRANTED**.

    (3)    The Commissioner's decision denying benefits be **AFFIRMED**.

                                      s/ *Susan K. Lee*
                                      SUSAN K. LEE
                                      UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Case 1:13-cv-00224-CLC-SKL   Document 17   Filed 06/03/14   Page 17 of 17   PageID #: 535